**In re Shahzad KHALIGH, Debtor.**

**Shahzad Khaligh, Appellant,**

v.

**Fred Hadaegh, Appellee.**

**BAP. No. CC–05–1148–KPaB.**
**Bankruptcy No. LA 02–46357–BB.**
**Adversary No. LA 03–01368–BB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 2005.

Filed Feb. 2, 2006.

Simon J. Dunstan, Hughes & Dunstan, LLP, Woodland Hills, CA, for Shahzad Khaligh.

Paul A. Beck, Sherman Oaks, CA, for Fred Hadaegh.

Before KLEIN, PAPPAS, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The question is whether the issue preclusive effect of a confirmed private arbitration award warranted summary judgment holding a debt nondischargeable per 11 U.S.C. § 523(a)(6) as based on "willful and malicious" injury. The arbitration satisfied the state law requirement that it

have been conducted using basic elements of adjudicatory procedure, and the confirmed award otherwise qualifies for issue preclusion. Hence, we AFFIRM.

## FACTS

The employment of debtor-appellant, Shahzad Khaligh, by Jet Propulsion Laboratory ("JPL"), a division of California Institute of Technology ("Cal Tech"), under the supervision of appellee, Fred Hadaegh, ended in 1994.

As part of the termination, Khaligh and Cal Tech executed a mutual Settlement Agreement and General Release to resolve all possible issues regarding her employment and termination. The Settlement Agreement provided for arbitration of disputes.

In 1998, Khaligh nevertheless sued JPL and Hadaegh in a California court on account of matters alleged to have occurred during her employment, including infliction of emotional distress, harassment, discrimination, and constructive discharge.

The state court compelled arbitration under the arbitration provision of the Settlement Agreement, which order survived Khaligh's mandamus challenge in the state appeals court.

The arbitration proceeded with retired California Superior Court Judge Richard Byrne acting as arbitrator. Proceedings spanned sixteen months, from initial status conference in April 2000 through final award in August 2001, during which there was discovery and some seventeen days of hearings and testimony. The defense ultimately prevailed. The award was backed by findings detailed in sixty-two numbered paragraphs, accompanied by the legal analysis characteristic of a seasoned jurist.

The arbitrator also awarded Hadaegh $100,000 in damages on his "cross-complaint" (a counterclaim in federal civil procedure) for defamation resulting from what Khaligh told the press in 1999 regarding his conduct as her JPL supervisor. It is that aspect of the award that is the nub of the dispute in this appeal.

Khaligh did not accept the arbitrator's invitation to test arbitrability by way of summary judgment and permitted the defamation issue to be tried on the merits in the arbitration.

The arbitrator ultimately ruled that the defamation claim was arbitrable as deriving from facts surrounding the Settlement Agreement and being inextricably linked with arbitrable claims.[1]

On the merits, the arbitrator found that Khaligh made false and defamatory statements to the press, with intent to publish, which were republished in newspapers and internet news media, and awarded Hadaegh $100,000, including $25,000 in punitive damages.

Khaligh filed a chapter 7 bankruptcy case on December 16, 2002, in which Ha-

---

1. The pertinent portion of the ruling was:

 I have considered the matter and find that, pursuant to the Settlement Agreement, Dr. Hadaegh's defamation claim is properly subject to arbitration in these proceedings. His claim derives from the same facts and circumstances surrounding claimant's employment at JPL that resulted from the Settlement Agreement. I believe that this inextricable nexus between claimant's arbitrable claims against Dr. Hadaegh and JPL, on the one hand, and Dr. Hadaegh's related defamation claim against claimant, on the other, supports my conclusion that the defamation claim is subject to arbitration. Statement of Essential Factual Findings and Legal Conclusions in Support of Award, at p. 12.

daegh commenced a timely adversary proceeding to except his defamation claim from discharge under § 523(a)(6).

Khaligh answered, asserting that the award lacked preclusive effect because it had not yet been judicially confirmed.

After Khaligh received a chapter 7 discharge, Hadaegh sought stay relief to permit the state court to confirm the award. The bankruptcy court ruled that the automatic stay had automatically expired pursuant to 11 U.S.C. § 362(c)(2)(C) when Khaligh received her discharge and, in view of the pending adversary proceeding, clarified that Hadaegh was free to attempt to have the arbitration award confirmed.

The state court granted the ensuing Petition to Confirm Arbitration Award and confirmed the award over Khaligh's opposition. It ruled that the arbitrator had authority to decide the defamation claim because there was an "inextricable nexus" between Khaligh's claims and Hadaegh's defamation claim.

The judgment confirming the arbitration award formally adopted the arbitrator's findings and conclusions. With attorneys' fees and costs, the judgment was for $107,200.10, plus interest. Khaligh did not appeal the state court's judgment.

The bankruptcy court granted summary judgment in the adversary proceeding based on the confirmed arbitration award. Applying California law of issue preclusion, the court concluded that all pertinent issues regarding defamation had been actually and necessarily litigated and were essential to the judgment. Applying Ninth Circuit precedent regarding defamation in the context of § 523(a)(6), *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir.2005), the court held that all the elements of nondischargeability under § 523(a)(6) were satisfied.

Judgment was entered excepting from discharge the $100,000 in damages (plus judgment interest) established in the state court judgment, but not the attorneys' fees and costs. This timely appeal ensued. There is no cross-appeal regarding the discharge status of attorneys' fees and costs.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

We review summary judgment de novo to assess whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Gertsch v. Johnson & Johnson (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).

We review rulings regarding rules of res judicata, including claim and issue preclusion, de novo as mixed questions of law and fact in which legal questions predominate. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988); *Alary Corp. v. Sims (In re Assoc. Vintage Group, Inc.)*, 283 B.R. 549, 554 (9th Cir. BAP 2002). Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion. *Robi*, 838 F.2d at 321; *George v. City of Morro Bay (In re George)*, 318 B.R. 729, 733 (9th Cir. BAP 2004), *aff'd*, 144 Fed.Appx. 636 (9th Cir.2005), *cert. denied*, — U.S. —, 126 S.Ct. 1068, 163 L.Ed.2d 861 (2006). When state preclusion law controls, such discretion is exercised in accordance with state law. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800–01 (9th Cir. 1995).

## ISSUE

Whether the confirmed private arbitration award was eligible for issue preclusive effect under California law so as to be applied in a bankruptcy nondischargeability action to establish willful and malicious injury.

## DISCUSSION

The narrow question is whether issues that were actually litigated and necessarily decided in the course of obtaining an arbitration award that was confirmed as a judgment by a California court are eligible for issue preclusive effect under California law.

If so, then issue preclusion may be applied in subsequent bankruptcy nondischargeability litigation. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### I

■ If a state court would give preclusive effect to a judgment rendered by courts of that state, then the Full Faith and Credit Statute (28 U.S.C. § 1738) imports the same consequence to an action in federal court based on the same award. *McDonald v. City of W. Branch,* 466 U.S. 284, 287, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir.2001).

■ Since the confirmation of a private arbitration award by a state court has the status of a judgment, federal courts

must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court. *Caldeira v. County of Kauai,* 866 F.2d 1175, 1178 (9th Cir.1989).[2]

Accordingly, the confirmed arbitration award at issue in this appeal requires that, as a matter of full faith and credit, we focus on California preclusion law in the arbitration setting.

### II

The basic features of California issue preclusion law were restated by the California Supreme Court in *Lucido v. Superior Ct.,* 51 Cal.3d 335, 341–43, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225–27 (1990), and then qualified with respect to arbitration awards in *Vandenberg v. Superior Ct.,* 21 Cal.4th 815, 824, 88 Cal.Rptr.2d 366, 982 P.2d 229, 234 (1999).

■ Six basic elements must be satisfied before issue preclusion will be applied. Five of the elements are described as "threshold" requirements: (1) identical issue; (2) actually litigated in the former proceeding; (3) necessarily decided in the former proceeding; (4) former decision final and on the merits; and (5) party against whom preclusion sought either the same, or in privity with, party in former proceeding.

The sixth element is a mandatory "additional" inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound

---

**2.** In contrast, preclusion by way of the rules of res judicata based on an unconfirmed arbitration award would have to proceed on a rationale different from full faith and credit. An unconfirmed arbitration award is not subject to the Full Faith and Credit Statute because arbitration is not a "judicial proceed-

ing" within the meaning of that statute, hence, any rule of preclusion with respect to an unconfirmed award would necessarily be judicially fashioned. *McDonald,* 466 U.S. at 288, 104 S.Ct. 1799; *Caldeira,* 866 F.2d at 1178 n. 2.

public policy. *Lucido*, 51 Cal.3d at 341–43, 272 Cal.Rptr. 767, 795 P.2d at 1225–27;[3] 1 ANN TAYLOR SCHWING, CAL. AFFIRMATIVE DEFENSES § 15:4 (2005 ed.) ("SCHWING").

Although there is an arbitration variation to the fifth element restricting *nonmutual* applications of issue preclusion that was introduced by *Vandenberg*, that variation does not apply to this appeal, which involves *mutual* application of issue preclusion. *Vandenberg*, 21 Cal.4th at 836–37, 88 Cal.Rptr.2d 366, 982 P.2d at 242–43.[4]

■ Finally, preclusion is an affirmative matter under which the party asserting preclusion bears the burden of establishing the requirements for its imposition. *Lucido*, 51 Cal.3d at 341, 272 Cal.Rptr. 767, 795 P.2d at 1225. Correlatively, the proponent bears the risk of nonpersuasion. *Cf. Camargo v. Cal. Portland Cement Co.*, 86 Cal.App.4th 995, 1018, 103 Cal.Rptr.2d 841, 855 *rev. denied* (2001).

## III

California has a comprehensive statutory scheme regulating private arbitration that is codified at title 9 of its Code of Civil Procedure. CAL. CIV. PROC. CODE §§ 1280–1294.2; *Vandenberg v. Superior Ct.*, 21 Cal.4th at 824, 88 Cal.Rptr.2d 366, 982 P.2d at 233–34.

## A

■ When Khaligh filed her bankruptcy case, the arbitration award had been rendered but not confirmed. Under California law, the unconfirmed award had merely the status of a contract in writing between the parties. CAL. CIV. PROC. CODE § 1287.6.[5]

■ The confirmation of a private arbitration award, which operates to elevate an

---

3. The precise statement by the California Supreme Court in *Lucido* of its issue preclusion doctrine was:

> Traditionally, we have applied the [issue preclusion] doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party in the former proceeding....
>
> Even assuming all the threshold requirements are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting.... Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protec-

tion of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy.

*Lucido*, 51 Cal.3d at 341–43, 272 Cal.Rptr. 767, 795 P.2d at 1225–27(citations omitted).

The policy element has been rephrased as "fairness and sound public policy." *Vandenberg*, 21 Cal.4th at 835, 88 Cal.Rptr.2d 366, 982 P.2d at 241, *citing Lucido*, 51 Cal.3d at 343, 272 Cal.Rptr. 767, 795 P.2d at 1226.

4. Under that variation, *nonmutual* application of issue preclusion is limited to instances in which the party to be precluded has agreed to such a consequence. *Vandenberg*, 21 Cal.4th at 836–37, 88 Cal.Rptr.2d 366, 982 P.2d at 242–43 ("[W]e adopt, for California purposes, the rule that a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree.").

5. The section titled "Effect of Unconfirmed or Unvacated Award" provides:

> An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration.

arbitration award to the status of a judgment, requires a petition to the court. *Id.* § 1285.[6]

The petition to have the state court confirm the arbitration award was not filed until after the bankruptcy court clarified that the automatic stay expired with respect to Khaligh personally upon entry of her discharge and, in light of the pending nondischargeability action, no longer impeded proceeding in state court to complete the confirmation and judicial review process under state law. 11 U.S.C. § 362(c)(2)(C).

 In the confirmation proceeding, the state court was authorized to correct or vacate the arbitration award if the arbitrator exceeded his authority by entertaining the defamation issue. CAL. CIV. PROC. CODE §§ 1286.2(a)(4) & 1286.6(b).[7]

 When the state court confirmed the arbitration award in favor of Hadaegh, a judgment was entered that had the same force and effect as a judgment entered by that court in a civil action. *Id.* § 1287.4.[8] That judgment was in effect when the matter came before the bankruptcy court.

## B

 As noted, California decisional law permits an arbitration award to provide the basis for issue preclusion in the *mutual* context (i.e., between the same parties and those in privity with them), but not in the *nonmutual* (i.e., third party) context unless the arbitral parties agree to such nonmutual use. *Vandenberg,* 21 Cal.4th at 824-37, 88 Cal.Rptr.2d 366, 982 P.2d at 233-43.

---

CAL. CIV. PROC. CODE § 1287.6.
Although, as we note infra, unconfirmed arbitration awards are used as a basis for issue preclusion by California courts in appropriate circumstances, we are dealing with a confirmed arbitration award and leave to another day the question of whether the bankruptcy court could have applied issue preclusion on the basis of an unconfirmed award. *McDonald,* 466 U.S. at 288, 104 S.Ct. 1799.

6. The section titled "Filing Petition for Court Review of Award" provides:
 Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. The petition shall name as respondents all parties to the arbitration and may name as respondents any other person bound by the arbitration award.
CAL. CIV PROC. CODE § 1285.

7. An award may be vacated if the arbitrator exceeded his powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. CAL. CIV. PROC. CODE § 1286.2(a)(4). Otherwise, the award may merely be corrected. *Id.* § 1286.6(b).

8. The section titled "Judgment Confirming Award" provides:

If an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered, in an action of the same jurisdictional classification.
CAL. CIV. PROC. CODE § 1287.4.
For purposes of clarity, we emphasize that this appeal does not involve the doctrine of claim preclusion and its constituent doctrines of merger and bar under which a judgment forecloses relitigation of all theories that formed part of the original "claim," as defined in *Restatement (Second) of Judgments* § 24, regardless of whether they were actually litigated. Instead, because § 523(a)(6) was not part of the original claim, we are dealing with the doctrine of issue preclusion. *See Lucido,* 51 Cal.3d at 341 n. 3, 272 Cal.Rptr. 767, 795 P.2d at 1225 n. 3, *citing* RESTATEMENT (SECOND) OF JUDGMENTS § 27.

### 1

The leading California Supreme Court decision regarding arbitral preclusion is *Vandenberg*, which rejected all *nonmutual* applications of issue preclusion based on judicially-confirmed arbitration awards to which the party to be precluded has not agreed.

Although it early abandoned strict mutuality as a basic requirement of issue preclusion based on a judgment rendered after trial, *Bernhard v. Bank of Am.*, 19 Cal.2d 807, 811–13, 122 P.2d 892, 894–95 (1942), the California Supreme Court in *Vandenberg* disapproved *nonmutual* application of issue preclusion based on a private arbitration unless the person to be precluded agrees to the contrary. Hence, it answered in the negative the narrow question whether: "a judicially confirmed award in an arbitration governed by California's private arbitration law is entitled to collateral estoppel, or 'issue preclusion,' effect in favor of a *nonparty* to the arbitration." *Vandenberg*, 21 Cal.4th at 824, 88 Cal.Rptr.2d 366, 982 P.2d at 233–34 (emphasis in original, citation omitted).

The California Supreme Court took pains in *Vandenberg* to cabin its decision by emphasizing that its holding was "narrowly circumscribed" to the *nonmutual* issue preclusion context of private arbitrations and that it was doing nothing to cast doubt upon the body of intermediate appellate court decisional law that permits arbitration awards to be the basis for claim preclusion and issue preclusion in a *mutu*-

al context.[9] Thus, the *Vandenberg* decision cites, with apparent approval, leading California intermediate appellate court decisions in those contexts. *Id.*, at 824 n. 2, 88 Cal.Rptr.2d 366, 982 P.2d 229, *citing with approval, Kelly v. Vons Cos.*, 67 Cal. App.4th 1329, 1339–41, 79 Cal.Rptr.2d 763, 769–70 (1998) (issue preclusion), *Thibodeau v. Crum*, 4 Cal.App.4th 749, 756–61, 6 Cal.Rptr.2d 27, 30–34 (1992) (claim preclusion), *and Sartor v. Superior Ct.*, 136 Cal. App.3d 322, 327–28, 187 Cal.Rptr. 247, 249–50 (1982) (claim preclusion).

The state supreme court explained in *Vandenberg* that California issue preclusion "is not an inflexible, universally applicable principle" and that, "even where the minimal prerequisites for invocation of the doctrine are present," its use may be limited where the "underpinnings of the doctrine are outweighed by other factors." *Vandenberg*, 21 Cal.4th at 829, 88 Cal. Rptr.2d 366, 982 P.2d at 237 *quoting with approval Lucido*, 51 Cal.3d at 341, 272 Cal.Rptr. 767, 795 P.2d at 1226–27, *and Jackson v. City of Sacramento*, 117 Cal. App.3d 596, 172 Cal.Rptr. 826 (1981); *see generally* 1 SCHWING § 15:4.

In response to the concerns of its two dissenting justices about the potential breadth of the decision, the *Vandenberg* court emphasized the importance of the limiting principle that issue preclusion is available "in any setting *only* where such application comports with fairness and sound public policy." *Vandenberg*, 21 Cal.4th at 835, 88 Cal.Rptr.2d 366, 982

---

9. It explained:

> Our holding is narrowly circumscribed. Nothing in our decision imposes or implies any limitations on the strict res judicata, or "claim preclusive," effect of a California law private arbitration award. [Citations omitted.] We also do not address the cir-

cumstances, if any, in which a private arbitration award may have "issue preclusive" effect in subsequent litigation between the *same parties* on different causes of action. *Vandenberg*, 21 Cal.4th at 824 n. 2, 88 Cal. Rptr.2d 366, 982 P.2d at 234 n. 2 (emphasis in original).

P.2d at 241 (emphasis in original). It added that the "fairness and sound public policy" analysis under California preclusion law depends in part upon the character of the forum that first decided the issue, in which "courts consider the judicial nature of the prior forum, i.e. its legal formality, the scope if its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings." *Id.*, 21 Cal.4th at 829, 88 Cal.Rptr.2d 366, 982 P.2d at 237. Under that principle, small claims court judgments are denied issue preclusive effect. *Id.*, 21 Cal.4th at 829 & 835, 88 Cal.Rptr.2d 366, 982 P.2d at 237 & 241, *citing Sanderson v. Niemann*, 17 Cal.2d 563, 573–75, 110 P.2d 1025, 1030–31 (1941).

Since the *Vandenberg* majority emphasized these points as a limiting principle that is applicable to all cases in order to rebut the concerns of the dissenters, it follows that the "fairness-and-sound-public-policy" analysis that takes into account the judicial nature of the underlying proceeding is applicable to arbitral issue preclusion, as with any other California issue preclusion. In other words, in the wake of *Vandenberg*, any application of issue preclusion based upon an arbitration must clear the "fairness-and-sound-public-policy" hurdle that takes into account the judicial nature of the underlying proceeding.

2

When California courts assess the "fairness-and-sound-public-policy" prerequisite for imposing issue preclusion based upon an arbitration award, they take into account the considerations articulated in *Restatement (Second) of Judgments*, which emphasize the importance of the question whether the underlying arbitration followed basic elements of adjudicatory procedure and was, thus, "adjudicatory in nature." *Kelly v. Vons Cos.*, 67 Cal. App.4th at 1336, 79 Cal.Rptr.2d at 767, *citing Restatement (Second) of Judgments* § 84; *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177–79 (9th Cir.2002) (California law), *citing Restatement (Second) of Judgments* §§ 83–84.[10]

One could also construe this aspect of the policy requirement as amounting to a

---

**10.** The Ninth Circuit in *Jacobs* was dealing with an unconfirmed private arbitration award in a diversity case and applying, by way of diversity rules, the California state-law doctrine that issue preclusion may be premised on an unconfirmed award. We, in contrast, confront a confirmed award as to which the strictures of the Full Faith and Credit Statute apply. The adjudicatory procedure analysis, however, applies to all California arbitration awards, confirmed and unconfirmed.

The consensus within the California appellate courts is that an unconfirmed arbitration award may be "sufficiently firm" as to warrant issue preclusion with respect to matters actually and necessarily litigated and determined in the course of the arbitration so long as the proceeding was sufficiently adjudicatory in nature. *E.g., Kelly*, 67 Cal.App.4th at 1336, 79 Cal.Rptr.2d at 767 (issue preclusion imposed on unconfirmed award); *Lehto v. Underground Constr. Co.*, 69 Cal.App.3d 933, 939, 138 Cal.Rptr. 419, 422 (1977) (same); 1 Schwing §§ 14:41 & 15:4; Cal. Practice Guide: Alternative Dispute Resolution ¶ 5:542 (Rutter Group 2004).

The status of an unconfirmed arbitration award as a mere contract under California Code of Civil Procedure § 1287.6 does not compel a contrary result. California law distinguishes finality for purposes of rules of res judicata (including issue preclusion) from finality for other purposes and applies the rule stated in *Restatement (Second) of Judgments* § 13 ("The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar [claim preclusion]), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."). *George Arakelian Farms, Inc. v. Agric. Labor Relations Bd.*, 49 Cal.3d 1279, 1290–91, 265 Cal.Rptr. 162, 783 P.2d 749, 755–56 (1989) ("finality

rule that, in the context of arbitration, the prerequisites for issue preclusion that the pertinent issue have been "actually litigated and determined" and have been "essential" to the outcome before issue preclusion may be imposed, *Arakelian*, 49 Cal.3d at 1289–90, 265 Cal.Rptr. 162, 783 P.2d at 754–55, are to be assessed through the prism of whether the specific arbitration was adjudicatory in nature. *Cf. Camargo*, 86 Cal.App.4th at 1018, 103 Cal.Rptr.2d at 855 (issue preclusion based on confirmed arbitration award reversed for lack of proof that there was "full litigation and fair adjudication" of precluded issue).

 The essential point is that, while confirmation of an arbitration award under California law does not turn on whether the arbitration proceeding was conducted in an adjudicatory manner, California makes the adjudicatory nature of the underlying arbitration a prerequisite for using the award as a basis to impose issue preclusion in other litigation.

 The crucial inquiry regarding adjudicatory nature is whether the arbitra-

tion hearing possessed a judicial character. As with administrative proceedings, if there was the requisite judicial character, then relitigation may be precluded:

> Parties to an arbitration, like parties to administrative hearings, are often afforded the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision. When an arbitration has these attributes, it is not unjust to bind the parties to determinations made during the proceeding.

*Kelly*, 67 Cal.App.4th at 1336–37, 79 Cal. Rptr.2d at 767.

 The arbitration provision of the *Restatement (Second) of Judgments* specifically incorporates the standards for preclusive administration adjudications. RESTATEMENT (SECOND) OF JUDGMENTS § 84, *incorporating id.* § 83.[11] Thus, whether any particular arbitration is eligible for preclusion depends upon whether adjudica-

---

for purposes of appellate review is not the same as finality for purposes of res judicata."), *citing with approval*, RESTATEMENT (SECOND) OF JUDGMENTS § 13 (*"Arakelian"*). The Ninth Circuit recognized this California consensus in *Jacobs*.

**11.** The *Restatement* rule regarding arbitral preclusion is:

§ 84. Arbitration Award
(1) Except as stated in Subsections (2), (3), and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.
(2) An award by arbitration with respect to a claim does not preclude relitigation of the same or a related claim based on the same transaction if a scheme of remedies permits assertion of the second claim notwithstanding the award regarding the first claim.

(3) A determination of an issue in arbitration does not preclude relitigation of that issue if:
 (a) According preclusive effect to determination of the issue would be incompatible with a legal policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question, or with a purpose of the arbitration agreement that the arbitration be specially expeditious; or
 (b) The procedure leading to the award lacked the elements of adjudicatory procedure prescribed in § 83(2).
(4) If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.
RESTATEMENT (SECOND) OF JUDGMENTS § 84.

tory standards for administrative tribunals were satisfied.

Under *Restatement (Second) of Judgments* § 83, an adjudicative determination by an administrative tribunal is preclusive only insofar as the proceeding entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

RESTATEMENT (SECOND) OF JUDGMENTS § 83(2).

With those considerations in mind, we return to the specifics of the Khaligh–Hadaegh arbitration.

### C

■ Beginning with the question of adjudicatory standards, which we discussed as an additional or sixth element of California issue preclusion, we note that the arbitrator was a retired California Superior Court judge who was by definition experienced in the adjudicatory process. There is no dispute that the parties had adequate notice. Both appellant and appellee were represented by counsel throughout the arbitration. The arbitration spanned sixteen months. The parties engaged in extensive discovery, formulated issues, and had seventeen days of hearings that enabled the parties to present evidence, rebuttal evidence, and argument.

The record indicates that the arbitrator considered all of the evidence, the arguments advanced by the parties, both orally and in writing, and the law applicable to the parties' claims. The Arbitration Award is a twenty-three page written decision plainly prepared by a jurist, which award reflects that the arbitrator reviewed the pertinent legal authorities on the issue, the applicable facts and evidence, and concluded that Khaligh defamed Hadaegh. In other words, the proceeding was conducted in an inherently adjudicatory fashion.

It follows that the arbitration award meets the adjudicatory standards in a manner that satisfies the California law requirement that application of issue preclusion be fair as between the parties and comport with public policy.

### D

Turning to the threshold requirements for California issue preclusion previously described: (1) the defamation issue sought to be precluded from litigation in the adversary proceeding was identical to that litigated in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the

decision in the arbitration was final and on the merits; and (5) the party against whom preclusion would be applied—Khaligh—is the same party as in the arbitration. *Lucido*, 51 Cal.3d at 341, 272 Cal. Rptr. 767, 795 P.2d at 1225; *Harmon*, 250 F.3d at 1245 (California law); *Wright v. Turner (In re Turner)*, 204 B.R. 988, 992 (9th Cir. BAP 1997) (California law); 1 SCHWING §§ 15:2—15:5.

In the context of the specific bankruptcy nondischargeability issue under § 523(a)(6), the issues litigated in the defamation action would need to equate with "willful and malicious" injury.

■■■■ The first step of the § 523(a)(6) inquiry is whether there was a "willful" injury, which is construed to entail a deliberate or intentional injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In this circuit, the intent required in order to be "willful" is either the subjective intent of the actor to cause harm or the subjective knowledge of the actor that harm is substantially certain to occur. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1144–45 (9th Cir.2002), *aff'g* 259 B.R. 909, 912 (9th Cir. BAP 2001).

■■■■ The arbitrator found that Khaligh's false and defamatory statements were made with the intent to harm Hadaegh. This determination of subjective intent means that the "willful" requirement is met. Moreover, the decision of the arbitrator to award punitive damages tends to reinforce the nature of the arbitrator's finding. *Cruz v. HomeBase*, 83 Cal.App.4th 160, 167, 99 Cal.Rptr.2d 435, 440 (2000).

■■■] The second step of the § 523(a)(6) inquiry is whether appellant's conduct is "malicious." The relevant test for such "malicious" conduct is: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) without just cause and excuse. *Sicroff*, 401 F.3d at 1105–06.

■■■ In this instance, the result is largely controlled by the Ninth Circuit's decision in *Sicroff* regarding the nondischargeable status of a California defamation claim.[12] In that decision, the court of appeals treated the first three elements of "malicious" as easily satisfied by a defamation directed against a university professor as self-evidently wrongful, committed by an intentional act of publication that was directed at, and necessarily caused harm to, the target's professional reputation. *Id.* at 1106. The court of appeals paused in *Sicroff* only as to the fourth element—lack of just cause or excuse—in light of an asserted aim of saving an academic department in a university from elimination. The pause was only brief because the Ninth Circuit concluded that evidence in the record of specific intent to injure the individual professor negated just cause or excuse. *Id.* at 1107.

In this instance, there is no assertion that the defamation by Khaligh was directed towards a goal that might implicate just cause or excuse. Hence, *Sicroff*, obliges us to conclude that the requirements for California issue preclusion are satisfied.

■■■ Having concluded that it was permissible for the court to apply issue preclusion to establish willful and malicious injury for purposes of § 523(a)(6), the

12. The nondischargeability action was decided before the actual trial of the state court defamation action, which action likely would have been mooted if § 523(a)(6) did not save the plaintiff's claim from discharge. *Sicroff*, 401 F.3d at 1103 n. 3.

question becomes whether the court's actual choice to do so nevertheless was an abuse of discretion.

As Khaligh has offered nothing to support her appellate burden of persuading us that the court applied an incorrect standard of law, a clearly erroneous view of the facts, or otherwise did something that leaves us with the definite and firm conviction that there was a clear error of judgment, we do not perceive an abuse of discretion in the choice of the court to impose issue preclusion as a basis for summary judgment.

\* \* \* \* \* \*

Imposition of issue preclusion as between the parties to the confirmed arbitration award was permissible under applicable California law. The bankruptcy court did not abuse its discretion when it entered summary judgment without relitigating the issue of willful and malicious injury. AFFIRMED.

PAPPAS, Bankruptcy Judge,
Concurring.

I write separately because I am concerned that the Panel's opinion, which broadly examines the preclusive effect of arbitration awards rendered in a variety of factual and procedural scenarios, could be read to apply outside the context of the narrow issue we are asked to decide in this appeal.

Appellee's arbitration award was confirmed by the California state court in a statutory proceeding in which Appellant was represented and actively participated. Indeed, Appellant's opposition in state court to the petition to confirm the award specifically raised her contention that the arbitrator exceeded his jurisdiction and authority when he entertained Appellee's

defamation claim, which is also the most important reason she offers us to overturn the bankruptcy court's decision. The state court expressly rejected that challenge. It ruled that:

> "[T]he Arbitrator did not exceed the scope of his authority in deciding Respondent's [Khaligh's] claims against Petitioner or Petitioner's claims against Respondent, which were encompassed within the arbitration terms of the Settlement Agreement. The fact that certain of Respondent's post-settlement employment at JPL had been terminated does not break the 'inextricable nexus' as described by the Arbitrator between Respondent's claims of discriminatory treatment by JPL and Petitioner, and Petitioner's defamation claims against Respondent arising from Respondent's own conduct toward Petitioner. . . . . The Court finds that Petitioner properly raised his defamation claims in this proceeding, and that the Arbitrator properly considered and determined them."

Statement of Decision and Order on Petition to Confirm Arbitration Award at p. 2, Los Angeles Superior Court, Case No. BC 198189 (March 29, 2004). The result of the state court proceeding was a money judgment in Appellee's favor confirming the arbitration award, which judgment Appellant did not appeal. That final state court judgment has "the same force and effect as . . . a judgment in a civil action . . . ." CAL. CIV. PROC. CODE § 1287.4. Given this record, there is no need to decide whether the arbitration award is entitled to issue preclusive effect in the bankruptcy case. It is the state court's *judgment,* not the arbitrator's decision, that is entitled to Full Faith and Credit.

In its analysis of the California cases, the primary opinion explores in depth the

"fairness" of the arbitration proceeding. I agree with the conclusion that the arbitration process encompassed all the critical attributes of a full-blown judicial proceeding, and that it was undoubtedly a fair one. But Appellant does not indict the procedures employed during the arbitration; her objection focuses on the scope of the arbitration. And while Appellant's scope argument was first offered to and rejected by the arbitrator in a cogent, persuasive analysis, more importantly, her contention was later submitted to the state court and judicially resolved. To me, that judicial resolution embodies all the fairness I think the California courts would require to afford preclusive effect to the state court's final judgment. And because Appellant had her day in court, I think it of is no moment whether the California courts would give preclusive effect to arbitration awards, confirmed or unconfirmed, mutual or nonmutual, under different facts, such as when a challenge to the general "fairness" of the underlying arbitration process is advanced.

The state court judgment satisfies all the requirements to be afforded preclusive effect. For this reason, I concur, but only in the disposition.