FILED

APR 3 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SIMON VERNON RODRIGUEZ<br>and MARILYN KAY SCHIPULL,<br>Debtors. | BAP No. NV-22-1174-CBG<br><br>Bk. No. 2:21-bk-14112-MKN<br><br>Adv. No. 2:21-ap-01228-MKN |
| SIMON VERNON RODRIGUEZ,<br>Appellant,<br>v.<br>STEVEN A. HOTCHKISS; ANTHONY<br>WHITE; ROBIN SUNTHEIMER; TROY<br>SUNTHEIMER; STEPHENS<br>GHESQUIERE; JACKIE STONE; GAYLE<br>CHANY; KENDALL SMITH;<br>GABRIELLE LAVERMICOCCA;<br>ROBERT KAISER,<br>Appellees. | OPINION |

Argued and Submitted February 24, 2023 at Las Vegas, Nevada

Appeal from the United States Bankruptcy Court
for the District of Nevada
Mike K. Nakagawa, Bankruptcy Judge, Presiding

Before: CORBIT, BRAND, and GAN, Bankruptcy Judges.

APPEARANCES:

Matthew C. Zirzow of Larson & Zirzow LLC argued for appellant; David
Liebrader of the Law Offices of David Liebrader argued for appellees

CORBIT, Bankruptcy Judge:

## INTRODUCTION

After a business enterprise went awry, several investors obtained a judgment in state court against Mr. Simon Vernon Rodriguez for violations of Nevada state securities laws ("Judgment Holders"). Mr. Rodriguez filed for bankruptcy and attempted to discharge the judgment debt. Although a debtor may discharge most debts in bankruptcy, a debtor may not discharge debts that result from a court judgment "for the violation of . . . securities laws." § 523(a)(19).[1] The Judgment Holders filed an adversary proceeding in which they asserted that § 523(a)(19)(A)(i) barred Mr. Rodriguez from discharging the judgment debt.

Mr. Rodriguez answered that he was only vicariously and secondarily liable for the violations of securities law and argued that § 523(a)(19)(A)(i) exempts debts from discharge only when the debtor is the primary violator of the securities law. Because the state court specifically found that Mr. Rodriguez violated Nevada securities law, the bankruptcy court did not err in granting summary judgment on the Judgment Holders' § 523(a)(19) claim and excepting Mr. Rodriguez's judgment debt from discharge, and we AFFIRM. We publish to discuss the scope of debtor culpability required by *Sherman v. SEC* (*In re Sherman*), 658 F.3d 1009 (9th

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "NRS" references are to the Nevada Revised Statutes.

Cir. 2011), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013).

## FACTS

### A.     History

Mr. Simon Vernon Rodriguez, Appellant, was the Treasurer and Chief Financial Officer of Virtual Communications Corporation ("VCC").[2] He was also a Director of VCC and owned over 11 % of the company.

VCC was involved in many enterprises through its subsidiaries.[3] One of the products VCC developed was a virtual receptionist. However, VCC needed additional capital to get the new technology to market. VCC raised the money by issuing promissory notes to outside investors.

VCC created a PowerPoint presentation to show potential investors. The presentation explained the technology VCC wanted to market and promised investors a 9% annual interest return. Investors were assured the investment was safe because the notes (defined as "securities" in the presentation) were personally guaranteed by R.J. Robinson, Chief

---

[2] The facts are taken from the state trial court's factual findings as stated in the Memorandum Decision, Findings of Facts and Conclusions of Law, and Judgment. *Hotchkiss v. Robinson*, No. A-17-762264-C, 2020 WL 13158120 (Nev. Dist. Ct. Apr. 27, 2020); *Hotchkiss v. Robinson*, No. A-17-762264-C, 2020 WL 13158121 (Nev. Dist. Ct. Aug. 20, 2020); *Hotchkiss v. Robinson*, No. A-17-762264-C, 2020 WL 13158119 (Nev. Dist. Ct. Aug. 21, 2020).

[3] VCC is a holding company that manages its wholly-owned subsidiaries including WinTech, LLC.

Executive Officer of VCC. The investor presentation explained that investing in VCC was a wise and financially secure investment.

Importantly, the investor presentation included information about Mr. Rodriguez. Potential investors learned Mr. Rodriguez was the Chief Financial Officer of VCC and that Mr. Rodriguez had "over 40 years of senior management experience," and that he was "specially qualified to oversee the operations, marketing and development" of the company. The final slide of the investor presentation included Mr. Rodriguez's contact information and directed any questions about the note offering to Mr. Rodriguez.

## B.    State Court Action

As a result of the investor presentations, VCC raised over four million dollars. However, in February 2015 VCC defaulted after failing to make payments on the outstanding notes. In September 2017 several investors filed a Nevada state court action against Mr. Rodriguez, Mr. Robinson, and others for the losses incurred related to the purchase of the notes. The complaint alleged claims for: (1) fraud, misrepresentations and omissions, (2) violation of Nevada securities laws NRS 90.310, 90.460 (licensing and registration); and (3) violation of NRS 90.570 and 90.660 (misrepresentations and omissions), and (4) breach of a written contract.

After a two-day bench trial and submission of closing briefs, the state court issued a (1) memorandum decision followed by (2) findings of facts and conclusions of law on liability, and (3) findings of facts and

4

conclusions of law on damages and attorney's fees, (collectively, the "State Court Decisions").

In summary, the Nevada trial court held that (1) the notes issued by VCC constituted a security within the meaning of the Nevada Securities Act, NRS 90.295, (2) VCC sold unregistered nonexempt securities to the Plaintiffs in violation of NRS 90.460, and (3) Mr. Rodriguez and Mr. Robinson were both control persons of VCC as defined under Nev. Admin. Code 90.035[4] and therefore, responsible for VCC selling unregistered securities in violation of Nevada securities laws.

The state court entered judgment against both Mr. Rodriguez and Mr. Robinson jointly and severely pursuant to NRS 90.660 (civil liability under Nevada Securities Laws) ("Judgment"). Mr. Rodriguez did not appeal the State Court Decisions or the Judgment.[5]

## C.    Bankruptcy

On August 20, 2021, Mr. Rodriguez and his wife, Marilyn Kay Schipull filed a voluntary Chapter 7 petition. Soon thereafter, the Judgment Holders from the state court action timely commenced an adversary

---

[4] Nevada defines a "control person" as an individual who (1) owns or controls 10 percent or more of the voting stock of a corporation; (2) is an officer or director of a corporation; or (3) is in a position to influence the decision-making processes of a corporation. Nev. Admin. Code 90.035.

[5] Pursuant to Fed. R. Evid. 201(b) we exercise our discretion to take judicial notice of materials electronically filed in the underlying cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003); *see also Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case).

proceeding in which they objected to Mr. Rodriguez discharging the debt resulting from the state court Judgment ("Judgment Debt"). *Id.*

The adversary complaint sought a determination of nondischargeability of the Judgment Debt based on § 523(a)(19)(A)(i), which dictates a debt nondischargeable if the debt "is for . . . the violation of any . . . Federal . . . [or] State securities laws" and the debt results from "any judgment [or] order" filed "before, on, or after the date on which the petition was filed." § 523(a)(19)(A)(i), (B)(i).[6]

### 1.    Cross motions for summary judgment in the bankruptcy adversary proceeding.

After filing the adversary complaint, the Judgment Holders filed a motion for summary judgment. In the motion, the Judgment Holders argued that the State Court Decisions and Judgment, when read together, had preclusive effect in establishing the elements for excepting the Judgment Debt from Mr. Rodriguez's discharge under § 523(a)(19).

According to the Judgment Holders, the Nevada trial court found that Mr. Rodriguez violated Nevada securities law and the resulting Judgment was entered against Mr. Rodriguez based on *his* securities law violations. Therefore, the Judgment Holders argued that Mr. Rodriguez's Judgment Debt "result[ed] . . . from a[] judgment" that was "for the violation of . . . [Nevada] State securities laws" and should not be discharged. § 523(a)(19)(A)(i), (B)(i).

---

[6] Mr. Rodriguez's wife was not named in the adversary complaint.

Mr. Rodriguez opposed the motion for summary judgment and filed a countermotion for summary judgment. Mr. Rodriguez assured the court he was not trying to collaterally attack the underlying decisions nor was he seeking review of the factual findings of the state court. Rather, he was calling into question whether the State Court Decisions made sufficient findings for purposes of satisfying § 523(a)(19).

According to Mr. Rodriguez, despite the plain language of the statute, the Ninth Circuit holding in *Sherman* imposes an additional requirement; that the debtor be the primary wrongdoer before determining the debt is "for" a securities violation and therefore, nondischargeable under § 523(a)(19). *In re Sherman*, 658 F.3d at 1018.

Mr. Rodriguez argued that his liability for violating securities law was imputed solely due to his positions within the company and not because of any actions on his part related to the note offerings. Mr. Rodriguez posited that he was not the actual wrongdoer who committed the securities law violation, rather, he was only secondarily and vicariously liable for violating Nevada securities laws. Consequently, Mr. Rodriguez reasoned, the State Court Decisions were insufficient for the bankruptcy court to conclude that his Judgment Debt was "for" a violation of securities law and excepted from discharge under § 523(a)(19).

The Judgment Holders filed a reply arguing that contrary to Mr. Rodriguez's assertions, nothing in § 523(a)(19) distinguishes between primary or control person liability, mentions vicarious liability, or requires

7

intentional conduct by the debtor. Furthermore, unlike the debtor in *Sherman* who was not a named party in the securities law violation action nor found liable of any securities violations, Mr. Rodriguez was a named party and found jointly and severely liable for a securities law violation. Hence, the holding of *Sherman* did not provide a valid basis to dispute whether the Judgment Debt was "for" a securities violation.

**2. The bankruptcy court grants the Judgment Holders' motion for summary judgment**.

After extensive briefing and a hearing, the bankruptcy court issued a written decision. The court found summary judgment appropriate after rejecting Mr. Rodriguez's interpretation of *Sherman*. The court explained that unlike the debtor in *Sherman*, Mr. Rodriguez was a responsible wrongdoer as to the securities law violation. Whereas the debtor in *Sherman* was a third party who was neither named in a securities law violation action nor found liable of securities violations, Mr. Rodriguez was both a named party and found liable in the securities law violation action. Therefore, contrary to Mr. Rodriguez's assertions, the holding of *Sherman* did not create a genuine dispute as to whether the Judgment Debt was "for" a securities violation.

The bankruptcy court also found issue preclusion applied after rejecting Mr. Rodriguez's claims that the Nevada trial court failed to fully consider or rule on his personal liability as to the securities law violation. The bankruptcy court cited to portions of the State Court Decisions in

8

which the state court explicitly found that Mr. Rodriguez was aware of, and involved in, VCC's selling of unregistered securities in violation of Nevada securities law. Therefore, despite Mr. Rodriguez's assertions to the contrary, the bankruptcy court concluded that the evidentiary record demonstrated that the claim for violation of NRS 90.660 was actually and necessarily litigated on the merits in the State Court Action and resulted in a final judgment against the Mr. Rodriguez for his violation of Nevada securities law.

Accordingly, the bankruptcy court applied issue preclusion to the State Court Decisions and Judgment after finding the underlying decisions fully satisfied the requirements of § 523(a)(19). Because there was no genuine issue of material fact left for the bankruptcy court to decide, the Judgment Holders' § 523(a)(19) motion for summary judgment was granted and the Judgment Debt was excepted from Mr. Rodriguez's discharge.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment to the Judgment Holders on their § 523(a)(19) claim based on the issue preclusive effect of the State Court Decisions and Judgment?

9

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment rulings and its determination to except a debt from discharge. *Ilko v. Cal. St. Bd. of Equalization* (*In re Ilko*), 651 F.3d 1049, 1052 (9th Cir. 2011). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emergency Serv. Restoration, Inc.* (*In re Lopez*), 367 B.R. 99, 103 (9th Cir. BAP 2007).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *Id.* A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A. Legal standards for summary judgment and issue preclusion.

#### 1. Summary judgment standards

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056); *Roussos v. Michaelides* (*In re Roussos*), 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. Once the moving party has met its initial burden, the non-moving party must show

10

specific facts establishing the existence of genuine issues of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### 2. Issue preclusion standards

Issue preclusion applies in dischargeability proceedings to preclude relitigation of state court findings relevant to exceptions to discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Bankruptcy courts may apply the doctrine to an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh* (*In re Khaligh*), 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Issue preclusion in nondischargeability proceedings is governed by the preclusion law of the state in which the judgment was issued, which in this case is Nevada. *Harmon v. Kobrin* (*In re Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001).

Under Nevada law, issue preclusion applies if (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling was on the merits and has become final; (3) the party against whom the judgment was asserted is the party or is in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

### B. Exceptions to discharge under § 523(a)(19)

Usually, all debts arising prior to the filing of the bankruptcy petition will be discharged. Although this is the general rule, the statutory provisions of § 523(a) (governing nondischargeable debt) reflect a

11

congressional decision to exclude certain liabilities from discharge ensuring the Bankruptcy Code's fresh start policy is only available to "honest but unfortunate debtor[s]." *Grogan*, 498 U.S. at 287.

At issue in this case is § 523(a)(19)(A)(i) which prohibits debtors from discharging debts for securities violations. Section 523(a)(19) was added as an additional exception to discharge in 2002 as part of the Sarbanes-Oxley Act to "prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible." *In re Sherman*, 658 F.3d at 1016 (quoting 148 Cong. Rec. S7418-19 (2002) (statement of Sen. Leahy)).

Specifically, Section 523(a)(19) makes nondischargeable any debt that:

(A) is for—
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—

> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

> (ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

As evidenced by the plain language of the statute, § 523(a)(19)(A)(i), (B)(i) sets forth an expedited process that accords preclusive effect to appropriately memorialized judgments arising from liability for securities law violations and securities fraud.

Prior to the addition of § 523(a)(19), a judgment creditor was often required to relitigate the securities violations in bankruptcy court because the elements of a state or federal securities violation did not align with the elements necessary to establish nondischargeability under § 523(a). S. Rep. No. 107-146, at 2-16 (2002). By adding § 523(a)(19), Congress created an expedited preclusive process intended to protect a victim's ability to recover their losses by both eliminating the need to relitigate the securities violations in bankruptcy court and by making the judgments and settlements based upon securities law violations nondischargeable. *See id.* at 2-8.

**C.    The bankruptcy court did not err in applying issue preclusion because the State Court Decisions and Judgment expressly state that Mr. Rodriguez violated Nevada securities law.**

Mr. Rodriguez argues that the bankruptcy court erred in applying issue preclusion because the state court did not decide his personal culpability as to the securities violations and therefore his violation of

securities laws was not actually and necessarily litigated. In the alternative, Mr. Rodriguez argues that he was only found to be secondarily or vicariously liable of violating Nevada securities laws and therefore, the issue decided in the state court action was not identical to the finding necessary to exempt a debt from discharge pursuant to § 523(a)(19)(A)(i).

1. **Mr. Rodriguez's various arguments against preclusion are without merit and are belied by the plain language of the State Court Decisions and Judgment.**

Contrary to Mr. Rodriguez's assertions, the bankruptcy court did not abuse its discretion in finding that Mr. Rodriguez violated a state securities law and applying issue preclusion to the State Court Decisions and Judgment.

After conducting a preclusion analysis, the bankruptcy court found Nevada's requirements for applying issue preclusion satisfied. The bankruptcy court found that the same parties were in both actions and that the state court rendered a valid and final judgment on the merits. The bankruptcy court also found that the claims alleged involved violations of Nevada securities law and that the claims of securities law violations were actually and necessarily litigated culminating at a trial at which the credibility of the evidence and witnesses were assessed including that of Mr. Rodriguez.

The bankruptcy court properly rejected Mr. Rodriguez's assertion that his liability for the securities violation stemmed solely from his

14

position within the company and not from any overt acts on his part and therefore, his liability was not actually and fully litigated. Drawing upon the extensive evidentiary record, the bankruptcy court found that Mr. Rodriguez's primary defense at the trial court was his characterization of himself as an innocent bystander who was unaware and not involved in VCC's notes offering until after VCC defaulted. The trial court, however, was not persuaded; instead, finding Mr. Rodriguez personally liable for the securities law violation because he was aware, involved, and influenced VCC's issuance of the notes.

In its decision, the bankruptcy court identified specific evidence and testimony cited in the State Court Decisions demonstrating that the trial court rejected Mr. Rodriguez's attempts to minimize his involvement and liability.[7] According to the trial court, Mr. Rodriguez failed to present any evidence demonstrating that he was not directly or indirectly involved in the acts regarding the violation of Nevada security regulations. Rather, the preponderance of the evidence demonstrated that both Mr. Robinson and Mr. Rodriguez were directly and intimately involved in creating the material to sell the Notes.[8]

---

[7] For example, the state trial court found that Mr. Rodriguez was the CFO, was designated as the point of contact for investors who had questions about the promissory note offering, was fully involved in the finances of the company, and was aware of the PowerPoint presentations that were prepared by VCC to show to prospective investors.

[8] Because Mr. Rodriguez chose not to appeal the State Court Decisions or Judgment, the Nevada trial court's factual findings are not in dispute.

15

To the extent that Mr. Rodriguez argued that others were the primary violators or more culpable, the bankruptcy court properly found such assertions irrelevant when determining whether Mr. Rodriguez's Judgment Debt should be excepted from discharge under § 523(a)(19)(A)(i).

Based on the record, the bankruptcy court did not abuse its discretion in giving preclusive effect to the State Court Decisions and Judgment because Mr. Rodriguez fully participated in the state court action resulting in a full and fair opportunity to dispute his liability. The state trial court found Mr. Rodriguez personally violated Nevada securities laws based on testimony and evidence presented. Therefore, the elements for nondischargeability under § 523(a)(19)(A)(i) were actually litigated and necessarily decided in rendering the State Court Decisions and Judgment.

2. **Because proof of the entry of the State Court Decisions and Judgment was tendered to the bankruptcy court, the Judgment Debt was rendered nondischargeable under § 523(a)(19) without proof of any additional element.**

Importantly, the bankruptcy court's issue preclusion analysis was unnecessary because the plain language of the State Court Decisions confirms that Mr. Rodriguez violated securities law and the resulting Judgment was "for" a securities law violation. There is no need to look behind a judgment to a trial court's factual findings when the judgment is against the debtor (as opposed to a third party) and the judgment and underlying decision found the debtor violated a state or federal securities law. Accordingly, once a determination of a securities violation has been

16

made, and proof of the entry of that order is tendered to the bankruptcy court, the debt is rendered nondischargeable under § 523(a)(19) without proof of any additional element or analysis.

**D.    The bankruptcy court did not err in granting summary judgment because there was no genuine dispute that the Judgment Debt was for a securities violation.**

The bankruptcy court did not err in granting summary judgment and rejecting Mr. Rodriguez's attempts to impose a primary liability element to § 523(a)(19)(A)(i).

**1.    *Sherman* does not impose a primary liability requirement.**

Mr. Rodriguez argues the bankruptcy court erred by failing to impose a "primary liability" standard he contends flows from the holding of *Sherman*. Mr. Rodriguez is mistaken. Although Mr. Rodriguez is correct that the *Sherman* court focused its analysis on the culpability of the debtor, the *Sherman* court did not impose a primarily liable or most liable standard as Mr. Rodriguez insists.

In *Sherman*, the SEC brought an enforcement action against certain companies. 658 F.3d at 1010. Sherman was an attorney who represented some of the defendants in the enforcement action. *Id*. As part of the action, Sherman was ordered to disgorge retainer advances "he had received . . . but had not [yet] earned" from his clients/defendants. *Id*. The SEC did not accuse or charge Sherman with any securities violations.[9] *Id*.

---

[9] The disgorgement order was not at issue in *Sherman* as "Sherman lacked any

17

After being ordered to disgorge the advancements, Sherman filed for chapter 7 bankruptcy relief. *Id.* In a related adversary proceeding, Sherman sought a declaratory judgment finding that the debt to the SEC resulting from the disgorgement order did not arise from a violation of securities laws and was therefore dischargeable. *Id*. at 1011. The bankruptcy court granted summary judgment in Sherman's favor, concluding as a matter of law that the SEC disgorgement order did not arise from the debtor's violation of a securities law. *Id.* The district court reversed, adopting a broad interpretation of § 523(a)(19). *Id.*

On appeal, the Ninth Circuit reversed the district court. *Id*. at 1018. After analyzing the statutory history of § 523(a)(19) and the goals of bankruptcy, the *Sherman* court held that § 523(a)(19) only prevents the discharge of a debt for a securities violation "when the debtor is responsible for that violation." *Id*. at 1019. Because Sherman was a third party and he was not named in the securities law violation action nor was he found liable for violating securities law, the debt was not "for" a securities law violation.[10] *Id*. at 1018. According to the *Sherman* court,

---

interest in the money because he was obligated by the California Rules of Professional Conduct to return the amount by which his advances exceeded his ultimate fee." *In re Sherman*, 658 F.3d at 1010.

[10] The *Sherman* court found that wrongdoing could not be imputed to the debtor based on the disgorgement order. According to the *Sherman* court, requiring Sherman to disgorge the retainer advancements was very different from deciding that he was prevented from discharging those debts in bankruptcy. The "theories and the reasons behind disgorgement and discharge are quite distinct." *In re Sherman*, 658 F.3d at 1017.

Sherman was the "honest but unfortunate debtor," § 523(a)(19) was inapplicable, and the debt was discharged. *Id.*

### 2. Mr. Rodriguez's Judgment Debt is "for" a securities violation.

In this case, *Sherman* is distinguishable, and Mr. Rodriguez's attempts to analogize his facts to *Sherman* are in vain. In *Sherman*, the court refused to find a debt was "for" a securities violation when the wrongdoer was a third party, not the debtor. Thus, *Sherman* stands only for the proposition that the debtor be culpable for the securities violation, holding that § 523(a)(19) only "prevents the discharge of a debt for a securities violation when the debtor is responsible for that violation" and does not apply to debtors who receive funds derived from a securities law violation. *In re Sherman*, 658 F.3d at 1017-19. *Sherman* does not stand for the proposition that the debtor must be the most culpable or the primary violator as advocated by Mr. Rodriguez.[11]

Accordingly, the bankruptcy court did not err in finding there was no genuine issue of material fact that the Judgment Debt was "for" a securities law violation and granting summary judgment to the Judgment Holders.

### CONCLUSION

On this record, we conclude that issue preclusion was available with respect to the securities violation claim based on the State Court Decisions

---

[11] The cases cited by Mr. Rodriguez on appeal add little to the argument as each pertains to a different subsection of § 523(a) and/or were published prior to the enactment of the Sarbanes-Oxley Act, and thus predate the creation of the § 523(a)(19) exception.

19

and that the bankruptcy court did not abuse its discretion in applying issue preclusion to the State Court Decisions and Judgment. As that left no genuine dispute of material fact for the bankruptcy court to adjudicate, it did not err in granting summary judgment in the Judgment Holders' favor and finding that the Judgment Debt was nondischargeable under § 523(a)(19). We AFFIRM.