## McDermott *vs.* Palmer.

The word " *owner*," as used in the mechanic's-lien-law, is the correlative of *contractor*, and means the person who employs the contractor, and for whom the work is done, under the contract.

On the 22d of October, 1844, W. entered into a contract with P. to do the mason work upon thirteen houses to be erected by P. in the city of New-York. On the 21st of December, 1844, an agreement was made between W. and McC. as parties of the first part, and P. as the party of the second part, in which the agreement between P. and W. and also another agreement between P. and McC. as to the carpenter's work to be done on the said buildings were mentioned by way of recital, and by which it was mutually agreed and declared that the said agreements were thereby made void, and each of the parties released therefrom, &c. The parties of the first part then covenanted that they would purchase the said thirteen houses, &c. and that they would assume the payment of a sum of money then due and payable on a contract for the conveyance of five of the houses and lots, and also of a further sum due on the remaining eight lots, and would also pay to P. the several sums of money which had been advanced to the parties of

McDermott *v.* Palmer.

the first part upon their respective agreements, and also a further sum of money, being the balance of the purchase money of the said houses and lots; all of which said sums agreed to be paid to P. were to be secured by a mortgage upon the premises, to be executed to P. whenever a deed should be given. The agreement then contained a covenant that the parties of the first part would complete and finish the said thirteen houses according to the terms of the agreements first mentioned, and P. covenanted and agreed to give his notes for the amounts therein mentioned, and by a memorandum attached to the contract, agreed that a deed should be given when the several obligations of the parties should be fulfilled. *Held* that such agreement created the relation of owner and contractor, between P. and W. and McC. within the meaning of the act of April 20, 1830, for the better security of mechanics and others erecting buildings in the city of New-York.

ERROR to the New-York common pleas. The plaintiff in error brought his action under the "Act for the better security of mechanics and others erecting buildings in the city of New-York," passed April 20th, 1830, commonly called the mechanic's-lien-law. He was nonsuited at the trial, mainly on the ground that under and in consequence of a contract entered into on the 21st of December, 1844, between the defendant and Weeks and McCullough, the defendant could not be considered the *owner* of the buildings; at least for the purpose of being charged as such under the lien law. The facts are stated in the opinion of the court.

*James B. Sheys*, for the plaintiff in error.

*David Evans*, for the defendant in error.

*By the Court*, EDWARDS, J. This suit is brought to recover the value of certain work and labor, done and performed by the plaintiff, towards the erection of thirteen houses in the city of New-York, of which it is alledged that the defendant was, at the time, the owner. The plaintiff rests his claim upon the provisions of the "act for the better security of mechanics and others erecting buildings in the city and county of New-York," passed April 20, 1830, as amended April 13, 1832. (2 *R. S.* 648, 3*d ed.*)

It was not denied upon the argument that the work and labor was performed by the plaintiff, and that it was of such a char-

acter as would entitle him to a lien under the statute. The only question which was made was, whether, at the time the work was done, the relation of owner and contractor existed as between the defendant and Weeks, who employed the plaintiff.

It appears from the error book, that on the 22d of October, 1844, Weeks entered into a contract with the defendant to do the mason work upon the buildings in question. It further appears that afterwards, and on the 21st of December in the same year, an agreement was entered into between Weeks and McCullough as the parties of the first part, and the defendant as the party of the second part, in which the agreement between the defendant and Weeks, and also another agreement between the defendant and McCullough, as to the carpenter's work to be done on the said buildings, were mentioned by way of recital, and by which it was mutually agreed and declared that the said agreements were thereby made void, and each of the parties released therefrom; but it was also declared that the said agreements should be retained by the parties thereto for reference in regard to the matters specified in the new agreement. The parties of the first part then covenanted that they would purchase the said thirteen houses and the appurtenances, and that they would assume the payment of a sum of money particularly mentioned, which it was stated was then due and payable on a contract for the conveyance of five of the houses and lots, and also of a further sum due on the remaining eight lots, and would also pay to the defendant the several sums of money which had been advanced to the parties of the first part upon their respective agreements, and also a further sum of money, being the balance of the purchase money of the said houses and lots; all of which said sums agreed to be paid to the defendant were to be secured by a mortgage upon the premises to be executed to the defendant, whenever a deed should be given. The agreement then contained a covenant that the parties of the first part would complete and finish the said thirteen houses in all respects according to the terms of the agreement first mentioned, and the specifications thereof; and the defendant covenanted and agreed to give his notes for the amounts therein mentioned, which were to be ad-

vanced in separate sums to the several parties of the first part, and at different times, in reference to the progress of the work. The agreement contained some other provisions which are unimportant in reference to the question before us, but it contained no covenant on the part of the defendant to convey the premises to the parties of the first part.

There was a memorandum, however, attached to the agreement, which is signed by the defendant, and which has an evident reference to the agreement, which states that it is agreed that a deed of the property shall be given when the several obligations of the parties to the agreement are fulfilled. We think that, although there is no covenant to convey, in the agreement itself, still, that this memorandum when taken in connection with the agreement to which it is attached, and of which it was evidently intended to form a part, would create a binding contract to convey, upon which an action might be sustained, or which might be enforced in equity. (*Coles* v. *Tricothick,* 9 *Ves. jun.* 250. *Shippey* v. *Denison,* 5 *Esp.* 190. *Barry* v. *Coombe,* 1 *Peters,* 640. *Laythoarp* v. *Bryant,* 2 *Bing. N. C.* 735.)

The question then arises what construction is to be given to the agreement, in reference to the rights of the plaintiff in this suit.

It was proved on the trial that eight of the lots in question had been conveyed to the defendant on the 24th October, 1844. As to the remaining five lots, it does not appear whether he had ever received any conveyance. The agreement, however, shows that he assumed to have the right to make a contract in reference to the buildings to be erected upon them; and to have the right and the power to make a conveyance of them, or to procure one to be made; but he was not bound to execute such conveyance until the buildings were finished according to the contract. The relation then of the defendant to Weeks and McDermott was this: he assumed to have the right to give them a conveyance of all the thirteen lots; he had already entered into two separate agreements with them for doing the mason's and carpenter's work necessary to complete the buildings to be erected upon the lots; these agreements had been cancelled, and a new

McDermott *v.* Palmer.

one was entered into which, as regarded the character of the work to be done, embodied the substance of the first two agreements, and stated that such work was to be, done in consideration that the defendant would give his notes in the amount and at the times therein mentioned. Here then was a distinct building contract between the defendant who professed to be the owner of the premises, and Weeks, and McCullough who had merely a right to enforce a conveyance of them, after the buildings should be completed. It is true that the moneys to be advanced upon the building contract were to be secured by a mortgage of the premises, when a deed should be given. But they were to be advanced, not as a loan, but as is expressly stated in the agreement, as a consideration for the finishing of the houses according to the contract. If the building contract had stood by itself, there could be no doubt as to the relations between the parties, and certainly their relations can not be changed by incorporating the contract into an agreement for the sale of the premises, to be executed at a future day.

Under these circumstances we think it is manifest that the agreement of the 21st of December created the relation of owner and contractor between the defendant and Weeks and McCullough, within the meaning of the statute. The word *owner*, as used in the statute, is the correlative of *contractor*. It means the person who employs the contractor, and for whom the work is done under the contract.

It is said, however, that the agreement was with Weeks and McCullough jointly, and that Weeks only employed the plaintiff. This is true; but the sums of money to be advanced for the work and labor were to be paid to them separately, and the plaintiff offered to prove that the defendant held money in his hands due to Weeks individually, under the contract.

We think that the nonsuit ought not to have been granted, and that the judgment should be reversed, and a new trial had in the court below.