LOONIE and others *against* HOGAN.

Where the owner of a lot in the city of New-York contracted with a purchaser to convey the lot to him for a certain sum, and to loan him money in instalments for the erection of a building thereon, the price and the money lent to be secured by bond and mortgage upon the premises at the completion of the building, at which time the lot was to be conveyed, it was *Held*, that the seller of the lot was not " the owner of the building" within the meaning of the mechanics' lien act, although it was erected on lands of which he had the legal title.

That persons furnishing materials for such building could not, under that statute, compel payment for those materials out of the money agreed to be advanced by the seller to the purchaser.

That a parol promise by the seller of the lot to pay for the materials furnished to the purchaser, was within the statute of frauds, and void.

That a parol promise by the seller to accept a bill drawn on him by the purchaser for such materials, was also void.

LOONIE, Fitzgerald & Egan sued Hogan in the New-York common pleas to recover $150 and interest, for cut stone furnished by them, which were used in erecting ·a building on Eleventh-street, in the city of New-York. The complaint stated that the plaintiffs were stone cutters, and that on the 11th of August, 1849, they contracted with James Mullaney, " contractor of Robert Hogan, owner," to furnish the cut stone for a house erecting by Mullaney, for and under a contract with Hogan, the defendant, to be paid for as the work should progress ; that defendant was the owner of the lot on which the house was erected ; that the plaintiffs cut and furnished stone to the amount of $150 ; and on the 3d of October, 1849, furnished the defendant

with a written account, attested by the oath of Loonie, one of the plaintiffs. They aver that the defendant is liable to pay the amount, by virtue of the act for the better security of mechanics, &c., passed April 30th, 1830. The complaint also states that the defendant promised to accept an order, to be drawn on him by Mullaney in favor of the plaintiffs, for said material, and to pay it; that Mullaney drew such order for $150, and delivered it to the plaintiffs, but the defendant refused to pay it. They allege that the $150 remains unpaid. The answer denies nearly all of the material facts alleged in the complaint, and alleges that the defendant contracted to sell the lot on which the building was erected to Mullaney, and was to advance him money to build the house, by way of loan. The delivery of the attested account is not denied.

The cause was tried in February, 1851, before LEWIS B. WOODRUFF, one of the judges, and a jury.

It appeared that on the 19th of July, 1849, the defendant entered into a written contract with Mullaney and one Peter J. Flinn, by which he agreed to sell them the lot on which the house was subsequently built, and they agreed to purchase the same for $1700; they covenanted to proceed forthwith to erect upon it a four-story building, similar in all respects to one which was referred to as a pattern. The defendant was to loan and advance them $1300 in ten specified instalments, payable as the work progressed, and at certain stages of it particularly mentioned, the last amount to be advanced when it should be finished. When the building was inclosed the defendant was to convey the lot to Mullaney and Flinn, who were to mortgage it to him, and give him their bond, to secure the purchase money, together with the sums loaned and agreed to be loaned, payable in four years from the date of the contract, with semi-annual interest, the mortgage to contain a provision binding the mortgagors to keep the building insured for $1500. In case Mullaney and Flinn should neglect to finish the house, or

should suspend the work upon it for ten days, the defendant might insist upon the immediate payment of all his advances, and was authorized to sell the interest of Flinn and Mullaney at public or private sale, on giving a week's notice, and to apply the proceeds to the sums due or to become due on account of the premises, returning the surplus to Flinn and Mullaney.

The plaintiffs, by a written proposal dated August 11, 1849, agreed with Mullaney to furnish the cut stone required for the building for $200, to be paid weekly in proportion to the quantity of stone delivered; and they actually fur nished stone prior to October 1, 1849, to the amount of $150. On the 1st of October, 1849, Mullaney delivered to the plaintiffs an order on the defendant for $150. There had previously been an order given for the same amount, expressed to be for stone delivered to him, Mullaney, on Eleventh-street; but this appears to have been abandoned when the other order was given.

*Mullaney*, who was examined as a witness for the plaintiffs, testified that he built the house for himself; that before this order of October 1st was given, there was an interview between the plaintiff Loonie, the defendant, and the witness, in which the defendant inquired of the witness whether he would give the plaintiffs an order for the amount of the stone, to be paid by instalments as the payments should become due from the defendant to Flinn and Mullaney, and said that if so he would accept it, and the witness said he would give such an order; and the defendant told Loonie that any time during the day that he would come to him with such an order he would accept it. The order was signed on the same day, the stone to the amount of $150 having been already delivered. It did not appear that the order had ever been presented for acceptance. In November, 1849, the building was blown down, and the defendant advanced Mullaney $300 to rebuild it under a new arrangement, the terms of which did not distinctly appear. It did

not appear how much of the money to be loaned by the defendant Mullaney and Flinn had entitled themselves to receive by the progress they had made on the wall when the account was served, nor how much they had received prior to that time. Defendant paid about $35 after that time on account of materials, but nothing for labor. The plaintiffs gave in evidence a full covenant deed from the defendant to Peter J. Flinn, dated April 1, 1850, which was expressed to be in consideration of $3000.

The defendant's counsel moved for a dismissal of the complaint, insisting that there was no privity of contract between the plaintiffs and the defendant; that the defendant was not the owner of the lot, nor was Mullaney a contractor for erecting the house within the provisions of the lien law ; that the defendant's promise to pay for the stone, if one was proved, was void for not being in writing ; and as to the order, that it had never been presented for acceptance.

The judge granted the motion and dismissed the complaint, and the plaintiffs' counsel excepted. The plaintiffs appealed to the general term of the common pleas, where the judgment was affirmed.

*Thomas Darlington* for the appellants.

*J. B. Dillon* for the respondent.

DENIO, J.   The act entitled " An act for the better security of mechanics and others erecting buildings in the city and county of New-York," provides that every mechanic doing any work towards the construction of any building in the city of New-York " erected under a contract in writing between the owner and builder, or other person," " may deliver to the owner of the building an attested account " of such labor, " and thereupon such owner shall retain out of his subsequent payments to the contractor

the amount of such work and labor, for the benefit of the person so performing the same." ( *Stat.*, 1830, 412, § 1.) The subsequent sections of the act provide for the adjustment of the account between the contractor and the party who rendered it, where it shall be disputed, which is to be brought about by arbitration if the parties cannot agree ; and when the amount due shall have been determined, if the contractor shall not pay it in ten days, "the owner shall pay the same out of the fund as above provided ; and which amount due may, be recovered from the said owner by the creditor of the said contractor, in an action for money had and received to the use of said creditor, and to the extent in value of any balance due by the owner to his contractor under the contract with him at the time of the notice first given as aforesaid, or subsequently accruing to such contractor under the same, if such amount shall be less than the sum due from the said contractor to his creditor." (§ 4.)   If by collusion or otherwise the owner of the building shall pay the contractor in advance of the times of payment mentioned in the contract, and there shall not be enough left to pay the party who shall have served the account, the owner shall notwithstanding be liable to the party as though such payments in advance had not been made. (§ 5.) This is the whole of the act; and the question in this case is, whether the relation between the defendant of one part and Mullaney and Flinn of the other, is that of owner and contractors for building, within the true construction of the statute. Assuming that the contract for the sale of the lot was entered into in good faith and without any view to evade the provisions of the lien law, it certainly presents a different case from the one which was primarily in the contemplation of the legislature.   The object of the law was to enable a laborer, mechanic or sub-contractor to attach, in effect, in the hands of the person for whom the building was erected, any debt which the latter might owe to the immediate contractor, on

Loonie *against* Hogan.

his contract for the work. As no lien attaches to the real estate, the title to the lot is not a matter of any importance; and the question would be the same, so far as I can perceive, if one should agree to lend money to the owner of a lot to enable him to build a house thereon, with an agreement to secure the loan by mortgage when the building should be completed. It would not be seriously contended in such a case that a mechanic or laborer employed by the borrower could proceed under the act to reach the money agreed to be loaned. The remedy which the statute gives is against money due to the principal contractor for the work which he agreed to do, but which the sub-contractor or mechanic has actually performed for him. It does not extend to money payable to the contractor on any other account. It is quite reasonable that the party meritoriously entitled to be paid for the work should be allowed to intervene between the owner for whom the house was built and the person who had contracted to build it, and to divert the course of the payments, which would have passed into the hands of such contractor, to his own. It is a form of equitable subrogation regulated by statute, but it is limited by the act to the plain case of money due upon a contract for performing the work.

The case is equally without the letter of the statute. It is the " owner of the building " against whom the remedy is given. In this case, although the title of the lot remained in the defendant, Mullaney and Flinn were erecting the building for themselves and not for the defendant. They, and not the defendant, were to own it when it should be completed. The money which the plaintiffs seek to obtain is money agreed to be loaned and not a debt agreed to be paid. It is only the latter to which the statute applies. If public policy or the joint interest of laborers and mechanics requires that the remedy should be extended so as to embrace the case of money agreed to be advanced otherwise than by a party contracting to have a building erected for himself, it is for the legislature to provide for such cases by new enactments.

Loonie *against* Hogan.

I am aware that the supreme court in the first district has arrived at a different conclusion in a similar case; but with every disposition to concur in opinion with so respectable a tribunal, I find myself unable to assent to the judgment in that case. (*McDermott* v. *Palmer*, 11 *Barb.*, 9.)

I see no reason to doubt but that the parties to the contract for the sale of the lot intended in good faith to make the precise bargain contained in it. It is not an unreasonable, nor, I believe, an unusual arrangement for the owner of town lots to connect with a contract to sell them, an agreement to loan money to the purchaser to be expended in building upon them, taking a lien on the real estate to secure both the purchase price and the money loaned.

There is no ground for holding the defendant liable on the draft. Considering what was said between the parties as an agreement to accept, it is unavailable for two reasons : first, it was not in writing (1 *R. S.*, 768, §§ 6, 7, 8); and second, the plaintiffs were to present this bill to the defendant on the same day on which the conversation was had; and it was only on that condition that the defendant agreed to accept. It does not appear to have been presented at all. There was no promise to pay for this work except what was said about accepting the bill. The ruling in the court below was therefore correct, and the judgment ought to be affirmed.

EDWARDS, J. The plaintiffs in this action claim that they are entitled to recover from the defendant the contract price of certain materials furnished to one James Mullaney, and used by him in the erection of a certain building in the city of New-York. The agreement between the plaintiffs and Mullaney was proved upon the trial, and it is not denied that the materials were furnished pursuant to that agreement. The only question which is raised upon this branch of the case is, whether the defendant is liable to the plaintiffs for the price of the materials, under the provisions of the "act for the better security of mechanics and

others in the city of New-York," passed April 20, 1830,
amended April 13, 1832. (2 *R. S.*, 648, 3*d ed.*)

The statute of 1830 applied to "every mechanic, work-
man or other person doing or performing any work towards
the erection, construction or finishing of any building in
the city of New-York erected under a contract in writing
between the owner and builder or other person," &c. The
amendment of 1832 extended the provisions of the act to
"all materials furnished and used in the performance of any
work," &c. The object of the statute was to protect the
person furnishing work and labor or materials, by giving
him a primary claim upon all moneys due upon the con-
tract in the performance of which the work and labor or
materials should be furnished. The claim of such person
was considered as more meritorious than that of the con-
tractor, and was preferred to it. But such preference was
intended to be given only in cases where there was a
building contract, and a debt due to the contractor by
reason of the work and labor or materials furnished by the
mechanic, laborer or sub-contractor, or otherwise. This is
clearly the intent and meaning of the statute. The ques-
tion then arises whether the agreement proved in this case
contains a building contract. It certainly does not in its
terms, and I think that it does not in its spirit.

The principal object contemplated by the parties to it
was the sale of the lot described in it. It will be observed
that no money was to be paid by the parties of the first
part until some time after a deed should be executed. The
sale was to be entirely upon credit; and, in addition to
this, a loan was to be made to the parties of the second
part to enable them to make such improvements upon the
property as would render the purchase an advantageous one
to them. The money to be advanced was expressed to be
a loan to be made to the parties of the second part to aid
them in the erection of the building, and not a payment as
a consideration for its erection. The parties of the second

part were thus to receive the benefit of the capital of the party of the first part, and there was probably a corresponding advantage to the party of the first part in the consideration which he was to retain, and which was to be secured by a mortgage upon the property, as enhanced in value by the improvements to be placed upon it by the parties of the second part. Under these circumstances I think that the relation of builder and contractor did not exist between the parties. It is true that the party of the first part would continue to be owner of the premises until a conveyance of them should be given; but the parties of the second part would not be contractors within the meaning of the statute. The case of *McDermott* v. *Palmer* (11 *Barb.*, 9) was referred to by the counsel for the plaintiffs; but it will be observed that in that case there was a building contract, and it was upon that ground that the court based their decision. In giving their opinion they say " that the moneys were to be advanced, not as a loan, but, as is expressly stated in the agreement, as a consideration for the finishing of the houses according to the contract."

The plaintiffs next claim that they are entitled to recover upon the orders drawn by Mullaney upon the defendant. It is not pretended that the orders were accepted, and it does not appear that they were drawn in such a manner as to operate as an assignment of any particular fund or claim.

The judgment should be affirmed.

The whole court concurring,

Judgment affirmed.