**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                  )    BAP No. CC-13-1267-PaTaKu
                                        )
ALLEN WILLIAMS BROWN,                   )    Bankr. No. 12-49655-BR
                                        )
              Debtor.                   )    Adversary 13-01002-BR
_____ )
ALLEN WILLIAMS BROWN,                   )
                                        )
              Appellant,                )
                                        )
v.                                      )    **M E M O R A N D U M**[1]
                                        )
HELEN ACOSTA; OSCAR ALEMAN,             )
                                        )
              Appellees.                )
_____ )

Submitted Without Oral Argument[2]
on February 20, 2014

Filed - May 12, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Appellant Allen Williams Brown, pro se on brief;
                 Appellees Helen Acosta and Oscar Aleman, pro se on
                 brief.

Before: PAPPAS, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[2] By order entered December 11, 2013, the Panel, after
examining the briefs and the record, unanimously determined that
this appeal is suitable for submission without oral argument
pursuant to Fed. R. Bankr. P. 8012.

Chapter 7[3] debtor Allen Williams Brown ("Brown") appeals the judgment of the bankruptcy court that a debt based upon a state court judgment in favor of appellees Helen Acosta ("Acosta") and Oscar Aleman ("Aleman" and, together, "Appellees") was excepted from discharge under § 523(a)(2)(A), and the order denying reconsideration of that judgment. We AFFIRM.

## FACTS

### A.

### The State Court Proceedings and Judgment

Brown filed a petition under chapter 7 on November 30, 2012. On his Schedule F, he listed a debt to Appellees for $200,000 stemming from a 2011 state court fraud judgment entered against him (the "State Court Judgment"). On May 2, 2007, Appellees had filed a complaint in Los Angeles Superior Court against Diana Beard-Williams ("Williams"), Rod Flowers ("Flowers"),[4] the F.A.B. Partnership ("F.A.B."), and Does 1-20. The complaint was thereafter amended, and Does 1 and 2 were subsequently identified as Brown, the estranged husband of Williams, and Patricia Ashburne ("Ashburne"), Williams' sister.

Williams filed an answer to the complaint on April 10, 2008. Though they had been served, neither Brown, Ashburne, nor F.A.B. filed answers. Notice of entry of defaults against Brown,

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

[4] Although Flowers was a named defendant in the complaint, the record is silent regarding his participation in the state court proceedings. There was no award against him personally in the State Court Judgment.

Ashburne, and F.A.B. were entered by the state court on July 9, 2010; none of the defaulted defendants moved for relief from the default within the time provided by statute.

Williams filed a chapter 7 bankruptcy petition on May 5, 2010. The bankruptcy court granted Appellees relief from automatic stay in Williams' bankruptcy case on October 1, 2010, to allow the state court proceedings to continue.

Trial was scheduled to begin in state court April 15, 2011. Neither Williams, Brown, nor Ashburne appeared. Although Williams had filed an answer to the complaint, her failure to appear caused the state court to strike her answer. Trial proceeded by default against all defendants. The state court entered judgment on May 31, 2011 (the "State Court Judgment"), in favor of Appellees and against Brown, Ashburne, Williams, and F.A.B.

In the State Court Judgment, the court found that, in the summer of 2006, Williams, a licensed real estate broker, approached Acosta, inviting her to join a partnership with Williams and a third party, Flowers, to invest in income producing properties in Memphis, Tennessee, and to reinvest income from those properties in continued acquisitions. On July 31, 2006, Williams, Flowers, and Acosta signed a written partnership agreement creating F.A.B. A few days earlier, Acosta had given Williams a check for $10,000 representing her contribution to the partnership.

Williams represented to Acosta that her sister, Ashburne, as buyer, had four properties in escrow that would be quitclaimed to the partnership upon close of escrow. The four properties were:

-3-

220 North Willet Street, 8508 Tournament Drive, 3422 Tournament Drive and 1242 Peabody Avenue, all in Memphis. Of the four properties, the 3422 Tournament Avenue property was particularly attractive for investment purposes because there was an agreement in place to lease the property to FedEx as an executive home and there would be a $100,000 cash-back bonus for the buyer of the property. Williams represented to Acosta that the bonus money would be available to repay Acosta's investment and to use for additional acquisitions.

In August 2006, Aleman was added to the F.A.B. partnership, and the name of the partnership was changed to F.A.A.B. (Flowers, Acosta, Aleman and [Beard-]Williams). Aleman invested $10,000, and would later increase that to $13,000.

Then, in an email to the partners dated October 18, 2006, Williams indicated that she had decided to leave the partnership, but that the investments made by Acosta and Aleman were secure. Williams represented that Aleman and Acosta would be given trust deeds on three properties to secure their investments.

In November 2006, the Appellees informed Williams that they were not happy with the operation of the partnership, in that they were not given information on the properties and were not being included in decision-making. The Appellees indicated their intention to dissolve the partnership and recover their investment. In December 2006, Williams told Acosta that she was consulting with an attorney to prepare a promissory note through which Acosta and Aleman would be repaid their investments.

The state court found that Williams never provided a promissory note or trust deeds to the Appellees. However, on

-4-

January 31, 2007, Williams told Acosta: "There is no agreement between you and [Ashburne,] or [Ashburne] and any particular group . . . . The [F.A.A.B. partnership] has one property and only one property. There are no bank accounts with [F.A.A.B.] funds." State Court Judgment at 8. The state court found that:

> These statements by Williams were a direct contradiction of statements that [Williams] had made both to Acosta and to Aleman in order to induce them to provide her with $23,000 in funds for the F.A.B. and F.A.A.B. Group and in order to assist her and her family to purchase the specific properties that she had told Acosta and Aleman were going to be purchased for the partnership by her and her sister and then placed into the name of the partnership. Further, the statement that there were no profits to distribute, and that there were no bank accounts with [F.A.A.B.] funds were false, in that — as reflected in the bank statement from Wells Fargo Bank for account ending in 1084 and for the statement end date November 30, 2006 — on November 22, 2006, one day after escrow had closed on the 3422 Tournament Drive property, Williams received a $112,000 wire transfer from Preferred Title and Escrow LLC, representing the bonus monies that Williams had told Acosta and Aleman would be paid to the buyer upon purchase of the 3422 Tournament Drive property.

State Court Judgment at 8-9.

The state court also found that, after receiving the $112,000, Williams deposited $45,000 in her personal savings account and $15,000 to her personal checking account, took $7,000 in cash, paid $8,000 on a family member's Advanta Card [Stanley Beard not otherwise identified by the state court], and wrote two personal checks for $10,000 and $25,000. According to the state court, "Williams exhausted funds which should have belonged to the partnership (based on the representations that she had made to the partners) by paying more than half of those funds to herself and her relatives or for their benefit." State Court Judgment at 11.

Importantly for purposes of this appeal, the state court

-5-

made the following specific findings relating to Brown:

> Escrow closed on the property located at 8508 Tournament, Memphis on September 23, 2006. The purchaser of that property was "Diana Williams." Williams quitclaimed that property to her husband [Brown] on July 30, 2007. This is another of the properties that Williams had repeatedly represented to Acosta and Aleman was going to be partnership property that would be quitclaimed to the partnership after purchase.

State Court Judgment at 10.

> Escrow closed on the property located at 1242 Peabody Avenue, Memphis, on November 17, 2006. The listed purchaser of that property was [Brown]. Again, this property was one of the properties which Williams represented was to be a partnership property and which would be quitclaimed to the partnership after close of escrow.

Id.

> Defendants Ashburne and Brown benefitted from Williams' false and fraudulent representations in that the properties which were supposed to be titled in the name of the partnership and the monies which Williams received as a result of her use of the capital investment funds provided by [Appellees] were – in fact — titled in [Ashburne and Brown's] names, and the funds were used by Williams to pay their debts. By way of example, bank records . . . reflect payment of mortgages on behalf of Brown and Ashburne during the months November 2006 through February 2007. The court finds that Williams' husband, Brown, and Williams' sister, Ashburne, were thus co-conspirators and joint venturers with Williams in the fraud and breach of fiduciary duty whereby they also took advantage of [the Appellees], and thus they should be held jointly responsible with Williams for losses suffered by [the Appellees].

State Court Judgment at 11. And finally,

> The court therefore finds, based on the foregoing facts, that the plaintiffs have met their burden of proof . . . and have also presented evidence sufficient for the court to find that defendants Williams, Ashburne and Brown collaborated in a civil conspiracy and joint venture from which the defendants, and each of them, benefitted at plaintiff's expense.

State Court Judgment at 12 (emphasis added).

-6-

The State Court Judgment awarded Acosta damages of $38,000 and $21,266.20 in attorneys fees, and awarded Aleman $41,000 in damages, all jointly and severally against Williams, Brown, Ashburne, and F.A.B. Brown and Ashburne appealed the State Court Judgment to the California Court of Appeals. <u>Acosta v. Ashburne</u>, case no. B233748. On April 25, 2012, the state appellate court affirmed the decision of the trial court, noting in its decision only that "Beard-Williams converted partnership funds to purchase properties in her own name, and in the names of Ashburne and Brown." Slip op. at 2.

## B.

## The Bankruptcy Adversary Proceeding

When Brown filed for chapter 7 relief, the Appellees commenced an adversary proceeding against him on January 2, 2013. In the complaint, they alleged two claims, one for an exception to discharge of Brown's debts to them for fraud under § 523(a)(2)(A), and the other for denial of discharge under § 727(a) because Brown had allegedly made false and misleading statements in his bankruptcy schedules. Brown filed an answer pro se to the complaint, generally denying the allegations, and arguing that he should not be held liable based on the State Court Judgment because it was a default judgment.

The bankruptcy court conducted a status conference in the adversary proceeding. Although the Appellees had not formally asked it to do so, the bankruptcy court began the status conference by informing the parties that it was prepared to rule that Brown's obligations to the Appellees based on the State Court Judgment were excepted from discharge in Brown's bankruptcy

-7-

case under § 523(a)(2)(A). Speaking primarily to Brown, the bankruptcy court stated:

> The reason that I wanted you here is very important because there was a superior court judgment filed. . . . I'm bound by that, I'm stuck with that judgment. . . . It was basically your wife or ex-wife whatever [who] entered into this conspiracy and at the end of the day that the judge found that you were part of that. You may disagree, but I'm bound by what the superior court judge says. So you're responsible for all of her fraud which the Court found. . . . I am bound by that. I can't change that. . . In this particular case . . . I have to find that that is nondischargeable because of fraud, because of what the superior court did, not because of anything I'm doing. . . . I'm finding, looking at the superior court judgment that you in fact engaged in this fraud and therefore this debt under section 523 is nondischargeable.

Hr'g Tr. 2:16–3:3, March 20, 2013.

Given the bankruptcy court's conclusion, and with the agreement of the Appellees, the court dismissed the claim against Brown for denial of discharge under § 727(a). Hr'g Tr. 7:5-6.

The bankruptcy court entered findings and conclusions on May 2, 2013. They included the following:

> [Finding] 2. The Court explained to the parties at the March 20, 2013 status conference that the state court judgment contained a specific finding of fact that the debtor/defendant conspired with Diana Beard-Williams, among others, to defraud the plaintiffs.
>
> [Finding] 3. The Court further explained to the parties that as a result of the state court's specific finding of fraud, the elements of the plaintiffs' claim for relief were met under the principles of collateral estoppel and the debt was therefore non-dischargeable.
>
> [Conclusion] 1. Under the principles of collateral estoppel, the finding in the state court's judgment that the debtor defrauded the plaintiffs renders the debt to plaintiffs nondischargeable under § 523(a)(2)(A).

Findings of Fact at 2. The same day, the bankruptcy court entered a judgment determining that Brown's debt to the Appellees

under the State Court Judgment was excepted from discharge under § 523(a)(2)(A) and dismissing the Appellees' claim for denial of discharge under § 727(a)(2) and (4).

Brown filed a motion for reconsideration of the bankruptcy court's judgment on May 16, 2013. The bankruptcy court denied the reconsideration motion without a hearing or any explanation in an order entered May 29, 2013.

Brown filed a timely appeal on June 6, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in ruling that Brown's debt to Appellees was excepted from discharge under § 523(a)(2)(A) by application of issue preclusion based upon the State Court Judgment.

Whether the bankruptcy court abused its discretion in denying Brown's motion for reconsideration.

## STANDARD OF REVIEW

Whether a claim is excepted from discharge under § 523(a)(2)(A) presents mixed issues of law and fact which we review de novo. Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2001). We review the bankruptcy court's findings of fact for clear error. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011). Clear error is found when the reviewing court has a definite and firm conviction that a mistake has been committed. Lewis v. Ayers, 681 F.3d 992, 998

(9th Cir. 2012). De novo review requires the Panel to independently review an issue, without giving deference to the bankruptcy court's conclusions. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

The availability of issue preclusion is reviewed de novo, and the bankruptcy court's decision to apply it is reviewed for abuse of discretion. Af-Cap Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1086 (9th Cir. 2007).

Denial of a motion for reconsideration under Rule 9023 is reviewed for abuse of discretion. Determan v. Sandoval (In re Sandoval), 186 B.R. 490, 493 (9th Cir. BAP 1995).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

**DISCUSSION**

**I. The bankruptcy court did not err in determining that issue preclusion was available based on the State Court Judgment.**

**A.**

The bankruptcy court ruled that, because the state court found in the State Court Judgment that Brown conspired to defraud the Appellees, under the doctrine of issue preclusion, Brown's debt to the Appellees was excepted from discharge under § 523(a)(2)(A). We conclude that the bankruptcy court correctly determined that issue preclusion was available.

To determine the preclusive effect of a California state

-10-

court's findings in a judgment or order in a later bankruptcy case, the bankruptcy court must first determine if issue preclusion is available under California law. See 28 U.S.C. § 1738 (the Full Faith and Credit Statute); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). When state preclusion law controls, a bankruptcy court's discretion to apply the doctrine must be exercised in accordance with state and federal law. Khaligh v. Hadegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007).

Under California law, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements for its availability: First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (the "Harmon" requirements). A sixth element requires a mandatory "additional" inquiry into whether imposition of issue preclusion in a particular setting would be fair and consistent with sound public policy. Lucido v. Super. Ct., 51 Cal. 3d 335, 341-43 (1990).

Section 523(a)(2)(A) provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit is excepted from discharge to the extent obtained by

-11-

"false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  Thus, the issues that must have been determined in the state court proceedings to permit exception to discharge under § 523(a)(2)(A) are:

> A creditor must show that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor [justifiably] relied on such representations; (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996).

The State Court Judgment principally addresses the fraud perpetrated on the Appellees by Williams.  The state court's findings would appear to satisfy the factors listed above, at least as to Williams:

> The Court finds that Williams made many fraudulent and false representations of material fact to Acosta and Aleman upon which they relied to their detriment.

State Court Judgment at 10.

However, Williams is not the debtor in this case — Brown is. And the State Court Judgment does not find that Brown made any representations to Appellees.  Indeed, there is nothing in the record to suggest that Brown ever communicated, or was otherwise in contact, with the Appellees.  Thus, Brown can not be held directly liable under § 523(a)(2)(A) for the fraudulent representations made to the Appellees by Williams.

Even so, our case law has long held that fraud committed by another can be imputed to the debtor, but only under limited

circumstances. In March 2014, the Panel published an en banc Opinion concerning the imputation of liability for an exception to discharge under § 523(a)(2)(A). Sachan v. Huh (In re Huh), 506 B.R. 257 (9th Cir. BAP 2014). As discussed in that Opinion, earlier BAP case law measured a debtor's responsibility for another's fraud under principles of agency, finding that liability for the actions of a partner could be imputed to the debtor under theories of partnership and agency. Id. at 269-72 (discussing Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 525 (9th Cir. BAP 2002)). However, after a comprehensive review of the case law, the Panel adopted the standard for imputation of fraud liability articulated by the Eighth Circuit in Walker v. Citizens State Bank (In re Walker), 726 F.2d 452 (8th Cir. 1984). Id. at 266. The Panel concluded that, to be true to the policies of the Bankruptcy Code and later case law, instead of focusing primarily on the debtor's status as an agent of the fraudster, the emphasis should instead be on the actions of the debtor. As the Panel explained, to shown that another's fraud should be imputed to the debtor, the creditor seeking an exception to discharge must show that the debtor acted with "culpable state of mind," and that the debtor "knew or should have known" of the perpetrator's fraudulent activities. Id. at 267.

**B.**

In this case, the bankruptcy court's decision to except from discharge Brown's debt to Acosta and Aleman was based on its conclusion that the State Court Judgment's finding that Williams, Brown, and Ashburne engaged in a "civil conspiracy" to defraud

-13-

the Appellees was entitled to preclusive effect. We agree that, under California law, a finding of civil conspiracy may qualify for issue preclusion.

Recall, the State Court Judgment provided, in relevant part, that

> Williams' husband, Brown, and Williams' sister, Ashburne, were thus co-conspirators and joint venturers with Williams in the fraud and breach of fiduciary duty whereby they also took advantage of Acosta and Aleman.

and

> That the plaintiffs . . . have also presented evidence sufficient for the court to find that defendants Williams, Ashburne and Brown collaborated in a civil conspiracy and joint venture from which the defendants, and each of them, benefitted at plaintiffs' expense.

State Court Judgment at 11, 12.

In California, "a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1582 (1995) (citing 1 Levy et al., Cal. Torts Civil Conspiracy, § 9.03[2], p. 9-12 (1995)); see also Youst v. Longo, 43 Cal. 3d 64, 79 (1987) ("the conspirators must agree to do some act which is classified as a 'civil wrong'"]. Liability for civil conspiracy under California law requires that three elements be satisfied: (1) formation of the conspiracy (i.e., that there be an agreement to commit wrongful acts); (2) operation of the conspiracy (i.e., the commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy. People ex rel. Kennedy v. Beaumont Investment, Ltd., 111 Cal. App. 4th 102, 137-38 (2003).

The first element, that there be an agreement to commit

-14-

wrongful acts, requires knowledge by the conspirators that the acts are wrongful. Put another way, the conspiring defendants "must have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." Favila v. Katten Muchin Rosenman, LLP, 188 Cal. App. 4th 189, 206 (2010); 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 589 (2003) (same); see also People v. Austin, 23 Cal. App. 4th 1596, 1607 (1979) ("without knowledge of the illegal purpose there is no basis for inferring a [civil conspiracy] agreement").

In addition, knowledge of the planned tort must be combined with the intent by a conspirator to aid in its commission. Kidron, 40 Cal. App. 4th at 1582 ("Knowledge and intent may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.").

In finding that Brown, Williams, and Ashburne were involved in a civil conspiracy, the State Court Judgment highlighted several facts concerning Brown's participation in that conspiracy. The state court found that two of the four houses that were supposed to be titled in the names of the partnership were instead titled in Brown's name; and that bank records for the accounts, which contained the $122,000 that was to be used for the partnership or distributed to the partners, were instead used to pay Brown's mortgages from November 2006 through February 2007. State Court Judgment at 11. On this record, then, it is clear that the state court found that Brown's actions were sufficient to meet the elements for a civil conspiracy to defraud.

-15-

The record also supports that, given the findings in the State Court Judgment, an exception to discharge is appropriate based upon the imputation of Williams' fraud to Brown under the test announced in In re Huh. In concluding that Brown participated in a civil conspiracy under California law, the state court necessarily concluded that Brown collaborated with Williams to defraud the Appellees and, thus, that Brown "knew or should have known" of Williams' wrongdoings.

In sum, the bankruptcy court did not err in determining that the state court's findings in the State Court Judgment were preclusive. Because those findings satisfy the standard the Panel announced in In re Huh, Williams' liability for fraud is properly imputed to Brown for purposes of an exception from discharge under § 523(a)(2)(A).

## C.

As discussed above, even though issue preclusion is available as to a judgment under state law, the bankruptcy court must nonetheless exercise discretion concerning whether to apply the doctrine. In re Khaligh, 338 B.R. at 832. Because the bankruptcy court must use judgment, based on the facts, in deciding to apply issue preclusion, the bankruptcy judge's several statements to the parties at the status conference indicating that he was "bound" by the State Court Judgment, that "there's nothing really I can do about it," and that "I'm stuck with it" are, at best, imprecise. However, in examining the context of those comments, we observe that the bankruptcy court was attempting to explain issue preclusion to non-lawyers. In response to the arguments of both parties challenging the factual

-16-

findings of the state court, we perceive the bankruptcy court was attempting to explain, primarily to Brown, that, absent unfairness, he should accept the findings of the state court: "I'm stuck with that judgment. So that judgment controls a good portion of this case. That is, the findings in that judgment." Hr'g Tr. 2:8-10, March 20, 2010. We conclude that the bankruptcy court's comments that it was "stuck with the judgment," and so on were at most harmless error. The court correctly noted that it could not revisit the individual findings of the state court.

In re Khaligh instructs that we should find an abuse of discretion by the bankruptcy court only if, in applying issue preclusion, "the court applied an incorrect standard of law, a clearly erroneous view of the facts, or otherwise did something that leaves us with the definite and firm conviction that there was a clear error of judgment." Id. at 832. Brown has the burden of proof to establish that the court should not have applied issue preclusion. Id. at 831-32. Brown has not addressed this question and thus has not met that burden. We conclude that the bankruptcy court did not abuse its discretion in deciding to apply issue preclusion.

**II. The bankruptcy court did not abuse its discretion in denying reconsideration of the judgment.**

Brown's motion asking the bankruptcy court to reconsider the judgment excepting his debt to the Appellees from discharge was filed fourteen days after entry of the judgment. It is thus treated as a motion to alter or amend judgment under Rule 9023, which incorporates Civil Rule 59(e). Heritage Pac. Fin., LLC v. Edgar (In re Montano), 501 B.R. 96, 112 (9th Cir. BAP 2013). A

-17-

motion for reconsideration under Civil Rule 59(e) should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009); Jeffries v. Carlson (In re Jeffries), 468 B.R. 373, 380 (9th Cir. BAP 2012).

In the reconsideration motion, Brown did not present newly discovered evidence, argue that there was a change in controlling law, or contend that the bankruptcy court committed clear error. Rather, as he has done in this appeal, Brown merely reargued his position on the merits:  that the findings in the State Court Judgment were wrong.  Brown has not demonstrated the existence of the highly unusual circumstances needed to justify reconsideration, and the bankruptcy court did not abuse its discretion in denying the motion.

## CONCLUSION

We AFFIRM the judgment of the bankruptcy court.

-18-